UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: National Arbitration Forum
Trade Practices Litigation,

Civil No. 10-2122 (PAM/JSM)

**MEMORANDUM AND ORDER**

This document relates to:
All Actions

---

This matter is before the Court on Plaintiffs' Motion for Final Approval of Settlement and Plaintiffs' Motion for Attorney's Fees and Expense Reimbursement. The Court held a hearing on this matter on August 4, 2011, and heard argument from Plaintiffs, Defendants, and several individuals who filed objections to the settlement. For the reasons that follow, and as stated at the hearing, the Court will grant the Motion for Final Approval and grant the Motion for Attorney's Fees.

**A.    Approval of Settlement**

Approval of a class action settlement under Federal Rule of Civil Procedure 23(e) is a two-step process; first, the Court must enter a preliminary approval order, and second, after providing notice of the proposed settlement to the class and a final fairness hearing is conducted, the Court must enter a final approval order. The Court preliminarily approved the settlement in April. (Docket No. 88.)

The settlement requires that: (1) NAF dismiss all pending consumer arbitrations (valued at approximately $1 billion), (2) Mann Bracken cease all collection activities arising out of NAF arbitrations (estimated to be worth about $3.8 billion to the class), (3) Accretive

and Agora refrain from investing in consumer arbitration business for ten years, and (4) a stipulated statement of facts regarding Defendants' financial relationships that class members can use to defend against other entities' collection activities.

The Court analyzes "four factors in determining whether a settlement is fair, reasonable, and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 932 (8th Cir. 2005). "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is [the first factor.]" Id. at 933 (citation omitted).

The first three factors undoubtedly weigh in favor of final approval. Plaintiffs have a strong case, as evidenced by Defendants' settlement with the Minnesota Attorney General for more than $30 million in the summer of 2009. Defendants' financial condition is precarious. Finally, the costs of further litigation would be great. Discovery alone would likely costs millions, given the number of consumer arbitrations involved.

The objections to the settlement, discussed in more detail below, do not cast doubt on the fairness of the settlement. The class likely numbers in the tens, if not hundreds, of thousands, and yet the Court received only eight objections to the settlement.[1] Moreover, although the objectors have strong feelings about their specific situations, the objections they

---

[1] One of the eight objectors is a pro se plaintiff whose case is not part of the settlement. The Court will not discuss his objections further.

raise are not, in the main, relevant to the issues the Amended Complaint and the settlement seek to resolve. The objections are discussed in more detail below.

**1.    Notice**

Rule 23(e)(1) requires that any notice of proposed settlement be directed in a reasonable manner to all class members who would be bound. Additionally, "the notice must be reasonably [calculated] to convey the required information and it must afford a reasonable time for those interested to make their appearance." Grunin v. Int'l House of Pancakes, 513 F.2d 114, 120 (8th Cir. 1975) (internal quotation marks and citation omitted). Because the settlement class is a (b)(2) class, the Court has considerable discretion in determining what constitutes appropriate notice.

The parties effected notice by publication and notice on the internet. Because of the state of Defendants' records and the prohibitive costs involved in sorting through those records, it was nearly impossible to determine the precise membership of the class, and the Court finds that this notice was the best notice practicable under the circumstances. Plaintiffs note that the banner ads regarding the settlement were viewed 190 million times, and that the website set up for the administration of the settlement received more than 100,000 "clicks." Given the unique circumstances of this case, the notice the parties used was reasonable.

**2.    Final Class Certification**

In the preliminary approval order, the Court certified the following settlement class under Fed. R. Civ. P. 23(b)(2):

[A]ll persons in the United States who were involved in a consumer debt

> collection dispute in which an arbitration was initiated with an NAF Entity and including persons subject to NAF awards that were discharged in bankruptcy. Excluded from the Class is any person who properly excludes himself or herself by filing a valid and timely request for exclusion as member of the Paid-in-Full Group in accordance with the requirements set forth in the Notice.

(Cialkowski Aff. Ex. A ¶ 1.5 (Settlement Agreement) (Docket No. 82-1).) The Court certified the class under Rule 23(b)(2) because the relief in the settlement is primarily injunctive. Only those class members who have paid their arbitration awards in full may opt out of the class, and a few of these "paid-in-full" class members have done so. Final certification of this class is appropriate.

### 3. Objections

#### a. **Malone/Miller/Robertson** (Docket Nos. 94, 95, 96)

Three individuals living in Alabama—Danny Malone, Jonathan Miller, and Dale Robertson—sent in substantially identical objections. Each of them claims to be the "victim of an arbitration that wrongfully found the I owed money," and each has an outstanding judgment against him that is not fully paid. They object to the settlement because "[i]t seems as though the only people getting any money are the attorneys." Each is also concerned that the settlement will prevent them from pursuing claims against the Defendants and "other potential wrong-doers." And they claim not to have received notice of the settlement.

According to Defendants, neither Mann Bracken nor any of its affiliates was involved in the arbitrations of two of these three objectors (Miller and Malone), and the arbitration of the third took place prior to the purchase of Mann Bracken and affiliates by the hedge fund Axiant. Thus, none of these objectors suffered any damage from the collusive activity

4

alleged in the Complaint. Moreover, the settlement does not prohibit these individuals from pursuing the "other wrong-doers" if they believe there was nefarious conduct. As noted in the Order denying Plaintiffs' requested preliminary injunction, anyone can seek to set aside an arbitration award procured through corruption or fraud, or that was the result of partiality. If they believe they have been wronged, these Plaintiffs can, armed with the findings of fact regarding the financial relationships among Defendants, seek to overturn their individual awards and judgments.

The objections of these objectors are without merit and will not preclude settlement approval.

      b.      **Roth** (Docket No. 98)

John D. Roth, Jr. claims that he was victimized by NAF arbitration awards "confirmed to judgment even though I had sufficiently pleaded that I was on to the deception and collusion of the National Arbitration Forum and MBNA and other creditors and debt collectors." He "demand[s] that all [NAF awards and judgments] be vacated and declared void ab initio, that all cases then be dismissed with prejudice, that all monies taken be returned to alleged debtors, and that alleged debtors be compensated with treble damages."

Mr. Roth's NAF arbitration award was entered in 2003, years before the allegedly collusive behavior that underlies this lawsuit. He apparently believes in a larger-scale collusion than just between the arbitrator and the debt collectors, because he accuses MBNA and other credit card companies of colluding with NAF. The claims in this lawsuit, however, do not involve the credit card companies, and thus his complaint about this collusion is

5

simply not redressable here, regardless of the scope of the settlement.

More importantly, however, the relief he "demand[s]" is simply not possible. His objections do not warrant disapproving the final settlement.

  c. **Weldon** (Docket No. 99)

Kevin M. Weldon had a default NAF arbitration award entered against him in December 2006. That award has been converted into a state-court judgment. He objects that the settlement "provides no meaningful relief for class members who have state court judgments entered against them" and "provides an illusory remedy, as it does not prevent any other debt collection firm from enforcing and/or collecting upon NAF arbitration awards or judgments." He does acknowledge that class members can seek to vacate their judgments, but complains that there are no funds set aside in the settlement to assist them in doing so.

Mr. Weldon's award was obtained before the law firm that secured the award was purchased by Axiant. Thus, he cannot establish any damage from the conduct alleged in the Complaint. His main objection about the lack of financial support to challenge the judgments is correct, but does not provide a basis for not approving the settlement.

  d. **Knobbe** (Docket No. 100)

Kevin Knobbe is not sure whether his consumer arbitration award is part of the settlement. His award was obtained in 2004, several years before the alleged collusive activity in the Complaint, and apparently has been reduced to judgment. His concerns are similar to the concerns raised by the other objectors—he wants all NAF awards to be declared void, and he does not know whether he has any legal recourse for his particular

judgment. Again, this objection provides no basis for not approving the settlement.

     e.     **Miers** (Docket No. 97)

Brad Miers appears to be the only objector who had an NAF arbitration during the alleged collusive period. However, Mr. Miers's arbitration did not proceed to an award or a judgment; he stipulated to the dismissal of the arbitration without prejudice. At the hearing, Mr. Miers's counsel contended that Mr. Miers was damaged by this dismissal because he was forced to settled the underlying debt on unfavorable terms. Such alleged harm, however, is likely unquantifiable and cannot constitute damages within the ambit of the Amended Complaint in this matter. Putting aside his likely lack of standing to object to the terms of the settlement, he raises a plethora of objections.

     **i.     Class certification under Rule 23(b)(2)**

Miers first contends that certification of the settlement class as a (b)(2) class is improper. He argues that the Supreme Court recently held that courts may not certify a class of money damages claims under (b)(2). But the relief in the settlement is purely injunctive, and this is precisely the type of class for which (b)(2) is intended. Even if money damages are "implicated," as Miers argues, the predominant relief the settlement affords is injunctive in nature. Moreover, his contention that a (b)(2) class is not entitled to notice is utterly without merit. All classes are entitled to notice under 23(e), and in fact here the class received notice of the settlement.

### ii. Presumptive unfairness/inadequate compensation to class

Next, Miers argues that the settlement is presumptively unfair because the only money to be paid is going to counsel, not to the class. Miers analogizes this to a settlement in which the defendants agree not to contest an inflated attorney's fees (a "clear-sailing" agreement) and also have a reversion clause so that any money left over reverts to the defendants. But this settlement has no reversion clause. Moreover, although the benefits to each individual class member are not monetary in nature, the benefit of Mann Bracken's agreement to forego collection activities on all pending NAF awards is substantial—the parties estimate the value of this piece of the settlement at more than $3.8 billion. For those class members with outstanding awards, this is undoubtedly a windfall. Mr. Miers may not be one of those fortunate individuals, but as discussed, because he never had an award entered against him, he cannot complain to be damaged by this aspect of the settlement.

### iii. Illusory injunctive relief

Miers contends that the injunctive relief in the settlement is illusory because NAF already agreed to the relief in its consent decree with the Minnesota Attorney General. This is a misinterpretation of the settlement. NAF did agree not to prosecute any new arbitrations in the consent decree, but here NAF goes further, agreeing to suspend and dismiss all pending arbitrations. Thus, NAF is agreeing to do something different than it agreed to in the consent decree. The settlement also provides additional relief in the form of concessions from the other Defendants and the findings of fact that judgment debtors can use to challenge their judgments.

None of Miers's objections warrant not approving the settlement.

## B. Attorney's Fees, Class Representative Awards, and Costs and Expenses

By a separate Motion, Plaintiffs are seeking attorney's fees, expenses, and class representative awards.

Plaintiffs seek $3,500 for each named Plaintiff as a class representative award. There are eight named Plaintiffs, so the total class representative award would be $28,000. The requested class representative awards are not excessive and are reasonable in light of the conduct of the litigation and the relief provided in the settlement.

Defendants have agreed to pay Plaintiffs' counsel a $2.9 million lump-sum payment to cover fees and costs. Defendants also paid $300,000 toward the notice expenses.

Courts use either the percent-of-the-fund method or the lodestar method (or a combination thereof) to evaluate the reasonableness of the attorney's fees in a class action settlement. Here, there is no "fund," so the lodestar method is the best check on how reasonable the requested fees are.

According to Plaintiffs' affidavit, counsel submitted "raw" time in excess of 11,000 hours to attorney Daniel Gustafson for their work on the case before settlement. This amounts to a lodestar of nearly $5.5 million. These hours are not excessive—the case was fiercely litigated, including a motion for preliminary injunction and motions to dismiss. The denial of the motions to dismiss was appealed to the Court of Appeals, and, when the appeal was denied, Defendants sought rehearing and rehearing en banc. The attorneys for both sides undoubtedly worked many hours on this case.

Moreover, Mr. Gustafson avers that he audited the bills and removed any hours that were duplicative and for which there may have been no common benefit. Even after this audit, the lodestar for the hours remaining is more than $2.5 million, and the actual out-of-pocket expenses total more than $200,000. The total of the adjusted lodestar and expenses for attorney time, not including any time expended to prepare the final settlement approval papers, is thus more than $2.7 million, which is close to the $2.9 million Defendants have agreed to pay.

Finally, using the percent-of-the-fund measure, and assuming the parties' estimates of the value of the injunctive relief are correct, the fees requested are less than 0.003% of the total benefit to the class of more than $4.8 billion.

The Court finds that the amount of fees requested are eminently reasonable in this case. Plaintiffs' Motion is therefore granted.

**CONCLUSION**

The Court finds that the class action settlement discussed above is fair and reasonable. In addition, the requested attorney's fees and expenses are also reasonable. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Final Approval of the Settlement (Docket No. 107) is **GRANTED**;

2. The Settlement Class specified in the Settlement Agreement is **CERTIFIED** under Fed. R. Civ. P 23(a) and 23(b)(2) ;

3. Plaintiffs' Motion for Attorney's Fees and Expense Reimbursement (Docket

No. 91) is **GRANTED**, and the Court hereby awards attorney's fees and costs in the amount of $2,900,000;

4. The Court hereby **GRANTS** approval of a service award of $3,500 to each of the remaining named class representatives: Kelly Marquis, Tommie Head, Robert Burgi, Peter Kennedy, Laura Siddons, Anthony Magnone, Randal Kinnunen, and Adriane Daniels, for a total of $28,000. These amounts are to be deducted from the $2,900,000 awarded in paragraph 3;

5. Plaintiffs' attorneys shall retrieve, from the M&I Bank business money market index escrow account entitled National Arbitration Forum Litigation Settlement Account, account number 0056343441, the amounts designated for attorneys fees and costs within ten (10) business days of the effective date of the Settlement, which is defined as the date on which the Final Judgment and Order of Dismissal has become final;

6. The Court adopts as its findings the facts detailed in the Court's "Findings of Fact," filed concurrently herewith, and orders that the Findings of Fact be merged with the Final Judgment and Order of Dismissal; and

7.      This case is **DISMISSED with prejudice** and the claims are released pursuant to the terms of the Stipulation and Settlement Agreement.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: Monday, August 8, 2011

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge